Please call the last case of the morning. 213-0922, Aldi, Inc. v. Sherry Cross. Good morning, Honorable Justices of the Appellate Court and Mr. Givens. My name is Robert Newman. I'm representing the Appellant Aldi, Inc. May it please the Court, this is an appeal from the Circuit Court of Kane County affirming the Workers' Compensation Commission. On behalf of Aldi, our presentation is that the Arbitrator and the Commission abuse their discretion on the conduct of hearings in the case. First, the Arbitrator conducted the hearing of July 14, 2010. At that time, the claimant, Ms. Coth, had not reached her maximum vocational potential through rehabilitation, under the testimony of vocational expert Mr. Minnick. There was a proper motion to continue the case filed with the Commission, and it was argued in the first five to ten pages of the arbitration transcript. To step back a minute and explain how we got to that point, the claimant, Ms. Coth, had been a store manager for Aldi. As a store manager, she had to set out the merchandise for sale. She had to schedule the assistant managers and cashiers and had to supervise their work. She had to order merchandise from the distribution center. She had to handle the money and the revenues received from the customers of the purchases, and she had to keep the store in good order. The claimant, Ms. Coth, had sustained an injury to her lower back on June 30, 2008. She went through a course of care with Dr. Heim and an examination with Dr. Gnaeum. She had a herniated disc at L5S1. She declined surgery. It was offered, and she made the choice to decline it. So she was provided permanent lifting limits of 20 pounds by consensus of Dr. Heim and Dr. Gnaeum, and also to avoid excessive bending, stooping activities. I think we know the facts. I mean, your position is that the hearing should have been postponed, the arbitration hearing should have been postponed, until she got a position more commensurate with her maximum vocational potential. Yes, exactly right, Your Honor, because she was capable of returning to work in a fashion that would enable her to earn something similar to what she had at Aldi, according to the testimony of vocational expert Minnick. Let's assume that's true. What statutory provision would require this, the postponement of the hearing until she reaches a maximum potential? What statute says that? Well, I think under Section 8D1, which is the section that we're dealing with here, the question is whether she's capable of returning to her usual customary line of work and whether there's an impairment of her earning capacity. So, Your Honor, your theory is that this thing could go on for years? When is it supposed to go to hearing? Yeah. Well, it could, Mr. Minnick said it could go on for some years to return the person to the earning capacity and responsibility that she had because of the fact that she was a store manager. He explained that most stores will not bring in somebody as a manager from the outside. He explained that many stores will acquire men. That's an argument to be made, but why does the arbitrator abuse his discretion when he doesn't want to continue a case for years until, and it may never happen. I mean, we don't know when it's ever going to happen. I mean, what does the law require there? Well, Your Honors, in the United Airlines case, the argument was that, you know, you can't have a succession of step decreases in an 8D1 benefit because of the fact that the law requires there to be just one 8D1 benefit that's going to be in effect for the person's lifetime. Well, you had the opportunity to establish the claimant's earning capacity at the arbitration hearing. Well, we did bring in Mr. Minnick, and he did testify to the fact that he felt that, based on Bureau of Labor statistics, this, excuse me, based on Bureau of Labor statistics, the wage range for persons like the claimant in the established store manager line of work would be between $44,000 and $63,000. The job that she had with Prairie Enterprises was not actually within that range at the time. And she took that job to behest her recommendation of Minnick, right? Well, he said that she should take that as a first step, yes. But she should also, at the time when she took the job, she said that she was going to take the assistant manager job, that there were promotion prospects within Prairie Enterprises. After a couple months, she said, oh, there really don't seem to be any promotion prospects within Prairie Enterprises because of the fact Prairie Enterprises has only two stores and they have incumbent managers. And so Mr. Minnick said, well, then let's look for something else where you can be a store manager like you were before. Minnick also testified that he was not convinced that the claimant's next job would be the one that gives her the absolute full pay. He conceded that his plan was to have her get a job with an advancement but that could take an indefinite amount of time. I guess I'm searching for how this would be different than any case. You'd have things going postponed for years. Why is the arbitrator required to do this? Well, because of the fact that the objective of rehabilitation under national T precedent is to maximize the claimant's earning power after the injury. And that's what we were attempting to do, to maximize her earning power. It should be to the benefit of both the claimant and the employer to maximize the claimant's earning power. It's not only with respect to her wage, even though that's the only thing we consider under the workers' compensation statute. So every wage differential case should be continued indefinitely, right, until they get the best paying job? Until they reach their maximum vocational potential according to the vocational rehabilitation counselor at the time after the injury. But you never really know that, do you? Do you ever really know that? When it's going to happen, does the arbitrator ever know? Does anybody know when it's going to happen? Well, you can't predict the future. That's part of the problem, yes. And what if it never happens? What about ten years down the road and she still hasn't reached the same job level? What do you do then? Well, at that point, you may say, well, I guess that was her maximum vocational potential. We should make the decision at that point.  Okay, go ahead. Well, I think what we're trying to do here is to resolve the problem between the fact that you just have one opportunity to make an 81 opinion and ruling and decision. The case law has indicated that at the time of the hearing, one must bring in the future expectations for what that person is going to earn in the future, but yet you worry about is the expectation presented by the witness for the future speculative or is it based on fact? You solve that problem by continuing to work with that person until they do reach the maximum vocational potential. What about the motion for remand for additional evidence? What's your position? Yes, the motion for remand, I believe it was in another abuse of discretion by the commission not to allow the remand for consideration of additional evidence. What happened there was that the counsel for the claimant was sending in wage dubs so that we would continue paying the wage differences while the matter was pending on review before the commission. Not after the review was decided, but during the pendency of the review. And notice that the wages were increased. So made a motion before the commission to remand the case to the arbitrator to take additional evidence. The wages were changed and the question would be were the responsibilities changed too? Are you now store manager of? Do you have any authority that you can cite requiring that to be done? What is the authority for that in the statute? Yes, we had example cases where the commission had remanded the case, remanded cases to the arbitrator for multiple different purposes where the commission felt like the evidence taken by the arbitrator was insufficient for the commission to answer. The commission felt that way here, but you're asking them to, while the matter is pending, you're asking for additional evidence to be taken. I'm asking them to vacate. I was asking them to remand the case to the arbitrator to take additional evidence because of the fact that we now know that the testimony before the arbitrator was incorrect in the assumption that the petitioner had basically had a level job earning the $528 per week. How does that jive with 19E of the Act that holds no additional evidence shall be introduced by the parties before the commission on review of the decision of the arbitrator? Because the request was for the case to be remanded to the arbitrator, not for the commission. Are you trying to circumvent, to create a way of circumventing the provision? Well, we know we can't do it before the commission, so aha, we'll ask it to go back to the arbitrator because technically it's not the commission. I mean, it's a very creative way of doing it. I'll concede that. It's a very amicable attempt, but I think you're circumventing the whole purpose of the Act. Well, no, I'm trying to carry out the purpose of the Act, which is to rehabilitate the claimant to the maximum that she can be rehabilitated, which benefits the claimant to the extent and because of the fact that she would then earn the best salary and the best benefits that she could going forward, benefit the respondent in the sense of reducing or eliminating the 8D1 benefit. It's a win-win for both sides that I'm trying to express and carry out and ask the Court to carry out. Vacate this ruling, which was wrong, and try to carry out the purposes of the Act by rehabilitating this lady to the maximum. And I question your motives, and I think they're legitimate, but remember, this is up here on a legal issue. It's an abuse of discretion. So it isn't whether or not your motives are pure. It's whether or not the Commission abused its discretion by denying this request. Is that not a legal issue? Yes. They abused their discretion by refusing to take into consideration evidence that was available when the case was pending on review. The Commission said, well, under Cassin's, once the 8D1 is final, we can't take additional evidence on the matter of wages. Yes, that's what Cassin said, but at the time we made the motion for remand, the 8D1 wasn't final. Therefore, Cassin's didn't speak to that situation, and the Commission's ruling to deny the remand to take additional evidence was erroneous. Thank you, Counsel. Counsel, you may respond. Your Honors, good morning. My name is Charlie Gibbon. I'm appearing on behalf of Sherry Cole, the Petitioner in this case. If there are no questions of me, I'm going to rely upon my brief. Thank you. If there are not, I'm going to consider your brief. Thank you. Mr. Newman, you may reply if you wish. If I had a brief, I think you already did. But you do have that opportunity. I would just like to add that, you know, with regard to the line of employment issue, the claimant still is in the same general line of employment of store management as she ever was. Therefore, the initial criteria for an 8D1 is not met in this case. And there is another separate legal reason why the ruling for the Petitioner's 8D1 award should be vacated and the case remanded to the Commission for further proceedings. Thank you. Very good. Thank you, Mr. Newman. Thank you both, Counsel, for your arguments. This matter will be taken under advisement, written disposition shall issue, and the courts shall stand in recess until 9 a.m. tomorrow morning.